IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

CARL CREWS,                      )
                                 )
    Plaintiff,                   )
                                 )
        v.                       )   1:11cv1184 (JCC/TRJ)
                                 )
S & S SERVICE CENTER INC.        )
t/a WOODBRIDGE PUBLIC AUTO       )
AUCTION,                         )
                                 )
    Defendant.                   )


**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Defendant S & S Service Center Inc. t/a Woodbridge Public Auto Auction's (WPAA) Motion to Dismiss [Dkt. 4].  For the following reasons, the Court will grant Defendant's motion.

### I.  Background

A. Factual Background

On August 18, 2010, Plaintiff *pro se* Carl Crews[1] purchased a used vehicle and a "Performance Shield 90 Day

---

[1] Although Plaintiff is preceding *pro se*, he is a licensed attorney. Therefore, Plaintiff "is not automatically subject to the very liberal standards afforded to a non-attorney *pro se* plaintiff because an attorney is presumed to have a knowledge of the legal system and need less protections from the court."  *Rossmann v. Chase Home Fin., LLC*, 772 F. Supp. 2d 169, 170 n.1 (D.D.C. 2011) (internal quotation marks omitted).

1

Limited Warranty" from WPAA. (Compl. [Dkt. 1] ¶ 1.) The warranty states that claims are administered by Performance Management (Performance Automotive Management or PAM). (Warranty [Dkt. 11-1] at 1.) Plaintiff asserts that prior to the purchase, the salesman stated that the vehicle had not been in an accident. (Compl. ¶ 8.) The "buyer's order" for the vehicle states that it is sold "as is." (*Id.* ¶ 23.) And, the "purchase order" or "bill of sale" for the vehicle contained an arbitration clause stating that disputes and claims shall be arbitrated by the National Arbitration Forum. (*Id.* ¶ 19.)

Plaintiff asserts that shortly after he left the dealership, the vehicle broke down. (*Id.* ¶ 9.) As a result, Plaintiff contacted PAM, which denied his claim. (*Id.* ¶¶ 10-11, 16.) Plaintiff then contacted the National Arbitration Forum, which informed him that it was prohibited from accepting consumer disputes. (*Id.* ¶ 20.) Plaintiff then sued WPAA in Virginia state court, where WPAA moved to compel arbitration. (*Id.* ¶¶ 19, 21.) The parties agreed to arbitrate Plaintiff's claim before William J. Virgulak, Jr., Esquire, of Attorneys Arbitration and Mediation, Inc. (*Id.*)

Plaintiff asserted two Virginia state law claims at the arbitration hearing on October 12, 2011. (Arbitration Opinion [Dkt. 5-1] at 1.) The first was for breach of the implied warranty of merchantability under Virginia Code § 8.2 –

314. (*Id.*) The second claim was for a violation Virginia Consumer Protection Act (VCPA), Virginia Code § 59.1 – 200 et. seq. (*Id.* at 1.)

On October 17, 2011, the arbitrator issued an opinion finding in favor of WPAA on both claims. (*Id.* at 5.) In considering the first claim, the arbitrator evaluated "whether the Magnusson-Moss Warranty Act, 15 U.S.C. § 2308, et. seq. (the MMWA) renders ineffective WPAA's intended disclaimer of all implied warranties by expressly stating in the contract documents that the sale of the vehicle was 'as is' with no applicable warranties." (*Id.* at 2.) The arbitrator noted that under the MMWA, a supplier may not disclaim implied warranties when the same supplier provides to the purchaser an express warranty concerning the subject vehicle. (*Id.*) But the arbitrator made a factual determination that the supplier of the warranty was PAM. (*Id.*) As a result, the arbitrator found that the MMWA did not preclude WPAA from disclaiming all implied warranties. (*Id.* at 3.) In considering the second claim, Plaintiff asserted that the salesman misrepresented to him, at the time of purchase, that the subject vehicle had not been involved in any prior accident. (*Id.*) The arbitrator found that Plaintiff had not met his burden of proof on this claim. (*Id.*)

3

Plaintiff seeks to vacate the Arbitration Opinion pursuant to the Federal Arbitration Act, specifically 9 U.S.C. § 10, on the grounds that the arbitrator acted in "a manifest disregard of the law" and "exceed[ed] his powers." (Compl. ¶¶ 31-32.) As to his implied warranty claim, Plaintiff alleges that the arbitrator "relied on extensive amounts of Parol Evidence," thereby "ignoring substantive and well-settled law in Virginia regarding contract disputes that is when the language of a contract is clear, unambiguous, and explicit, a court interpreting it should look no further than the four corners of the instrument under review." (*Id*. ¶¶ 28, 30.) As to his VCPA claim, Plaintiff states that "the Arbitrator correctly stated the law" but contends that he failed to follow it by dismissing the claim "without any discussion on the misrepresentation." (*Id*. ¶ 29.)

Plaintiff also requests this Court to order this case to another arbitrator. (*Id*. at 6.) Finally, Plaintiff requests a jury trial and $72,000 in actual and punitive damages. (*Id*.)

B. Procedural Background

Plaintiff filed the Complaint on October 31, 2011. [Dkt. 1.] On November 23, 2011, Defendant moved to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). [Dkt. 4.] Defendant argues that this Court does not have subject matter jurisdiction over this case. (Def.'s

4

Mem. in Supp. [Dkt. 5] at 4-6.)  Specifically, Defendant asserts that there is no jurisdiction under the following statutes: 9 U.S.C. § 10, 15 U.S.C. §§ 1640(e), 2201, 2301, and 28 U.S.C. §§ 1331, 1337.  (*Id.*; Def.'s Reply [Dkt. 13] at 1.)

Plaintiff was given a proper Roseboro notice pursuant to Local Rule 7(K) and *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975).  [*See* Dkt. 7.]  On January 10, 2012, Plaintiff filed a memorandum in opposition.  [Dkt. 11.]  On January 17, 2012, Defendant filed a Reply, in which it did not contest the timing of Plaintiff's opposition.  [Dkt. 13.]  This Court held a hearing on Defendant's motion on January 20, 2012.

Defendant's Motion to Dismiss is now before the Court.

## II.  Standard of Review

Pursuant to Rule 12(b)(1), a claim may be dismissed for lack of subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  Defendants may attack subject matter jurisdiction in one of two ways.  First, defendants may contend that the complaint fails to allege facts upon which subject matter jurisdiction may be based.  *See Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982); *King v. Riverside Reg'l Med. Ctr.*, 211 F. Supp. 2d 779, 780 (E.D. Va. 2002).  In such instances, all facts alleged in the complaint are presumed to be true.  *Adams*, 697 F.2d at 1219; *Virginia v. United States*, 926 F. Supp. 537, 540 (E.D. Va. 1995).

5

Alternatively, defendants may argue that the jurisdictional facts alleged in the complaint are untrue. *Adams*, 697 F.2d at 1219; *King*, 211 F. Supp. 2d at 780. In that situation, "the Court may 'look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.'" *Virginia v. United States*, 926 F. Supp. at 540 (quoting *Capitol Leasing Co. v. FDIC*, 999 F.2d 188, 191 (7th Cir. 1993)); *see also Velasco v. Gov't of Indonesia*, 370 F.3d 393, 398 (4th Cir. 2004) (holding that "the district court may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment") (citations omitted).

In either circumstance, the burden of proving subject matter jurisdiction falls on the plaintiff. *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Adams*, 697 F.2d at 1219; *Johnson v. Portfolio Recovery Assocs.*, 682 F. Supp. 2d 560, 566 (E.D. Va. 2009) (holding that "having filed this suit and thereby seeking to invoke the jurisdiction of the Court, Plaintiff bears the burden of proving that this Court has subject matter jurisdiction").

### III. Analysis

#### A. 9 U.S.C. § 10 as a Cause of Action Giving Rise to § 1331 Jurisdiction

The question before this Court is whether it has subject matter jurisdiction to consider the merits of Plaintiff's petition to vacate the arbitration award, brought under 9 U.S.C. § 10.  Beginning with the statute, there is no provision in § 10 of the Federal Arbitration Act (the FAA) that excludes federal court adjudication.[2]  On the contrary, § 10 permits "any party to the arbitration," and in some cases a person who is not a party to the arbitration, *see* 9 U.S.C. § 10(c), to petition "the United States court in and for the district wherein the award was made" when certain conduct occurs in an arbitration proceeding.  9 U.S.C. § 10 (2012).  Section 10

---

[2] 9 U.S.C. § 10 states, in full,
(a) In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration--
    (1) where the award was procured by corruption, fraud, or undue means;
    (2) where there was evident partiality or corruption in the arbitrators, or either of them;
    (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
    (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.
(b) If an award is vacated and the time within which the agreement required the award to be made has not expired, the court may, in its discretion, direct a rehearing by the arbitrators.
(c) The United States district court for the district wherein an award was made that was issued pursuant to section 580 of title 5 may make an order vacating the award upon the application of a person, other than a party to the arbitration, who is adversely affected or aggrieved by the award, if the use of arbitration or the award is clearly inconsistent with the factors set forth in section 572 of title 5.

itself specifies the particular conduct the petitioner must demonstrate.  *See id.*  And it supplies the remedy – an order vacating the award, and in certain situations, an order directing a rehearing by the arbitrators.  *See id.*

In considering the case law, the Supreme Court has explicitly stated that the FAA does not create federal question jurisdiction.  *See, e.g., Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581-82 (2008).  Yet, Plaintiff asserts that this Court has federal question jurisdiction under 28 U.S.C. § 1331, which vests in federal district courts jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States."  (*See* Compl. ¶ 5.)  And, in a recent decision the Supreme Court held that

> when federal law creates a private right of action and furnished the substantive rules of decision, the claim arises under federal law, and district courts possess federal-question jurisdiction under §1331.  That principle endures unless Congress divests federal courts of their §1331 adjudicatory authority.

*Mims v. Arrow Fin. Servs., LLC*, --- S.Ct. ---, 2012 WL 125429, 2012 U.S. LEXIS 906, at *20-21, January 18, 2012 (noting that Congress must "expressly or by fair implication, excludes federal-court adjudication").

Despite the tension, this Court believes it is bound to follow the Supreme Court's more specific finding that the FAA does not create federal question jurisdiction.  In assessing

8

whether the grounds for vacating arbitration awards that are set out in § 10 were exclusive, the Supreme Court stated "[a]s for jurisdiction over controversies touching arbitration, the [Federal Arbitration] Act is 'something of an anomaly in the field of federal-court jurisdiction' in bestowing no federal jurisdiction but rather requiring an an independent jurisdictional basis." *Hall Street Assocs., L.L.C.*, 552 at 581-82; *see also Vaden v. Discover Bank*, 556 U.S. 49, 129 S. Ct. 1262, 1271 n.9 (2009) (assessing § 4 petition to compel arbitration under the FAA and noting the FAA's anomaly with respect to jurisdiction); *Choice Hotels Int'l, Inc. v. Shiv Hospitality, LLC,* 491 F.3d 171, 175 (4th Cir. 2007) (applying this interpretation of jurisdiction under the FAA in assessing a § 9 petition to confirm an arbitration award and a § 10 petition to vacate an arbitration award). And, the Supreme Court has specifically stated that "[w]hile the [FAA] creates federal substantive law requiring the parties to honor arbitration agreements, it does not create any independent federal question jurisdiction under 28 U.S.C. § 1331 or otherwise." *Southland Corp. v. Keating,* 465 U.S. 1, 15 n. 9 (1984). Thus, this Court finds that the 9 U.S.C. § 10 petition does not provide § 1331 federal question jurisdiction.

B. <u>9 U.S.C. § 4's "Look Through" Test</u>

If the 9 U.S.C. § 10 petition does not itself create subject matter jurisdiction, the Court might still have federal question jurisdiction based on the underlying claims raised in the arbitrated dispute.[3] Just as the Supreme Court held that "[a] federal court may 'look through' a § 4 petition and order arbitration if, 'save for [the arbitration] agreement,' the court would have jurisdiction over 'the [substantive] controversy between the parties,'" *Vaden*, 129 S. Ct. at 1268, this Court might "look through" the § 10 petition to the underlying substantive controversy in order to obtain subject matter jurisdiction.[4] But "[t]he text of § 4 dr[ove] [the Court's] conclusion that a federal court should determine its jurisdiction by 'looking through' a § 4 petition."[5] *Id.* at 1273. Section 4 contains a unique clause that addresses when federal courts may entertain petitions to compel arbitration. Section 4 states, in relevant part:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28 [28 USCS §§ 1 et seq.], in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such

---

[3] Here neither party asserts diversity of citizenship, as Plaintiff resides in Maryland and Defendant is a Maryland corporation. (Compl. ¶ 2-3.)

[4] Here the underlying dispute arguably involved a violation of the MMWA.

> arbitration proceed in the manner provided
> for in such agreement.

9 U.S.C. § 4.  And, the Court found that this language "confines federal courts to the jurisdiction they would have 'save for [the arbitration] agreement.'"[6]  *Id.* at 1275.

Similar text is missing in § 10.  There is nothing in § 10 to suggest that this Court should consider its hypothetical jurisdiction absent the arbitration agreement when faced with a petition to vacate an arbitration award.  As a result, this Court declines to apply the "look through" test to § 10, because the "unique jurisdictional language" of § 4 that gave rise to the test is absent in § 10.  *See Med-Tel Int'l Corp. v. Loulakis*, 403 F. Supp. 2d 496, 499 (E.D. Va. 2005) (finding no subject matter jurisdiction over a petition to vacate an arbitration award, even though the underlying dispute between the parties purportedly implicated federal securities law, because the "look through" test was inapplicable).  Thus, the Court will not look through the petition to any of Plaintiff's claims involving the MMWA or any other ground Plaintiff suggests might give rise to jurisdiction.[7]

---

[6] In assessing whether the "controversy between the parties" could have been litigated in federal court, the Supreme Court found that the "complaint in Maryland state court plainly did not 'arise under' federal law, nor did it quality under any other head of federal-court jurisdiction." *Id.* at 1276.

[7] This includes 15 U.S.C. § 1640(e) and 28 U.S.C. § 1337.  Also, the Court notes that 28 U.S.C. § 2201(a) is not a jurisdictional grant. *See Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 671 (1950).

The Court recognizes that a petition to vacate an arbitration award would rarely be based on an independent violation of federal law.  Under § 10, a claim to vacate the arbitration award is limited to the types of cases that § 10 enumerates, as the Supreme Court held in *Hall Street Assocs., L.L.C.*, that "the statutory grounds are exclusive," and that "the FAA confines its expedited judicial review to the grounds listed in 9 U.S.C. §§ 10 and 11."  552 U.S. at 578, 592.  The grounds listed in § 10 include "where the award was procured by corruption, fraud or undue means," "where there was evident partiality or corruption in the arbitrators," and "where the arbitrators were guilty of misconduct in refusing to postpone the hearing . . . or in refusing to hear evidence pertinent and material to the controversy."  9 U.S.C. § 10.  As "review under § 10 focuses on misconduct rather than mistake," *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1752 (2011), such misconduct will rarely "arise under" federal law independent from § 10.

As a result, in rejecting the "look through" test as a way to gain subject matter jurisdiction over a § 10 petition, there is the "practical consequence[]" that "it [] permit[s] a federal court to entertain a § [10] petition only when a federal-question suit is already before the court, when the parties satisfy the requirements for diversity-of-citizenship jurisdiction, or when the dispute over arbitrability involves a

12

maritime contract." *See Vaden*, 129 S. Ct. at 1275 (discussing the consequences in the context of § 4). But this anomaly where a party can use diversity jurisdiction to obtain the FAA's expedited judicial review of the arbitration award, but can rarely obtain federal question jurisdiction to do so, is not necessarily that anomalous. If for example, Plaintiff "first [took] the formal step of initiating or removing a federal-question suit" then the court would have jurisdiction over the case.[8] *See id*. And if Plaintiff then filed a § 10 petition on his own, or in response to a motion that the dispute is barred by the arbitration award, this Court believes it would retain the jurisdiction it already had based on the complaint. Although, this Court recognizes that this approach "creates a totally artificial distinction based on whether a dispute is subject to pending federal litigation," *id*. at 1275, the Court believes it is necessitated by the fact that § 10 does not have § 4's unique jurisdictional hook.

---

[8] There is, however, a question as to whether the Court would have jurisdiction to hear Plaintiff's claim that the arbitrator acted in "manifest disregard of the law." An arbitrator acting in "manifest disregard of the law" is not explicitly enumerated as a ground for vacating an award in § 10. Instead, the claim finds its basis in the common law. *See Patten v. Signator Ins. Agency, Inc.*, 441 F.3d 230, 234 (4th Cir. 2006) (explaining this distinction). As mentioned above, in *Hall Street Assocs., L.L.C.*, the Supreme Court held that "the statutory grounds are exclusive." 552 U.S. at 578. The Fourth Circuit has declined to address whether common-law arguments are a basis for subject matter jurisdiction and entitle a petitioner to relief under § 10 after *Hall Street Assocs., L.L.C.*, and instead it has tended to resolve the issue on the merits. *See MCI Constructors, LLC v. City of Greensboro*, 610 F.3d 849, 857 (4th Cir. 2010); *Amerix Corp. v. Jones*, No. 09-2174, 2011 U.S. App. LEXIS 24548, at *17 (4th Cir. Md. Dec. 9, 2011). *But cf. Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-102 (1998).

## IV. Conclusion

For these reasons, the Court will grant Defendant's Motion to Dismiss.

An appropriate Order will issue.

                                                                       /s/

January 26, 2012                           James C. Cacheris
Alexandria, Virginia        UNITED STATES DISTRICT COURT JUDGE